IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND, *et al.*, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No. 1:15cv1220 (AJT/JFA) |
| v. | )<br>) |
| BURKE METALS LLC, | )<br>) |
| Defendant. | ) |

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 8). Plaintiffs are the Board of Trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund ("SMWIASF"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC") and they seek a default judgment against Burke Metals LLC ("Burke"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all parties.

1

## Procedural Background

On September 23, 2015, the plaintiffs filed this action alleging that Burke is obligated to pay them for certain overdue contributions, liquidated damages, interest, late charges, and attorney's fees and costs. (Docket no. 1). The summons and complaint were served on Burke's president on October 13, 2015. (Docket no. 4). In accordance with Federal Rule of Civil Procedure 12(a), a responsive pleading was due on November 3, 2015, which is 21 days after Burke was served with the summons and complaint.

Burke failed to file a responsive pleading in a timely manner and on December 18, 2015, the plaintiffs filed their request for entry of default. (Docket no. 6). The Clerk of Court entered default against Burke pursuant to Federal Rule of Civil Procedure 55(a) on December 23, 2015. (Docket no. 7). On January 8, 2016, the plaintiffs filed a motion for default judgment with a supporting memorandum and declarations from Walter Shaw and Matthew Tokarsky, and a notice of hearing for January 15, 2016 at 10:00 a.m. (Docket nos. 8–10). The motion for default judgment, supporting memorandum, declarations, and notice of hearing were served on Burke by first class mail on January 8, 2016. (*Id.*). On January 15, 2016, counsel for the plaintiffs appeared at the hearing on the motion for default judgment and no one appeared on behalf of Burke.

## Factual Background

The following facts are established by the complaint (Docket no. 1), the motion for default judgment (Docket no. 8), and the memorandum and declarations filed in support of the motion for default judgment (Docket no. 9).

SASMI is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl.

¶ 4). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (*Id.*). The SASMI is administered in Fairfax, Virginia. (Compl. ¶ 9).

NPF is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 5). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee pension benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (3). (Compl. ¶ 5). The NPF is administered in Fairfax, Virginia (Compl. ¶ 9).

ITI is the collective name of the trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 6). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 6). The ITI is administered in Fairfax, Virginia. (Compl. ¶ 9).

SMWIASF is the collective name of the trustees of the Sheet Metal Workers' International Association Scholarship Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 7). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary,"

within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 7). The SMWIASF is administered in Fairfax, Virginia. (Compl. ¶ 9).

The NEMIC is a labor management committee established pursuant to the Labor Management Cooperation Act of 1978 and 29 U.S.C. § 186(c)(9) that is funded by contributions under collective bargaining agreements. (Compl. ¶ 10).

SMOHIT is the collective name of the trustees of the Sheet Metal Occupational Health Institute Trust, a trust established under 29 U.S.C. § 186(c)(5) that is a joint labor-management health and safety organization serving the sheet metal industry. (Compl. ¶ 11).

Burke is a New Jersey limited liability company and is an employer in an industry affecting commerce as defined by 29 U.S.C. § 152(2) and 29 U.S.C. § 1002(5), (11), and (12). (Compl. ¶ 15). Burke does business with the plaintiffs in this district and a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred from transactions with the plaintiffs' offices in this district. (*Id.*). Burke employs employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Workers f/k/a Sheet Metal Workers' International Association and/or one or more of its affiliated local unions, which are labor organizations representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 16). Burke was a party to or agreed to be bound by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 17). Burke also entered into or agreed to be bound by the terms of the agreements and declarations of trust of SASMI, NPF, ITI, and SMWIASF (the "Trust Agreements") made between certain employers and employee representatives. (Compl. ¶ 18).

4

Under the Labor Contract, Trust Agreements, rules and regulations, and applicable law, Burke agreed to make full and timely contributions to the plaintiffs on behalf of employees who were covered by those agreements; to file monthly remittance reports detailing all employees or work for which contributions were required; to produce, upon request, all books and records deemed necessary to conduct an audit of Burke's records concerning its obligations to make payments to the plaintiffs; and to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorney's fees, expended by the plaintiffs to collect any amounts due as a consequence of Burke's failure to comply with its obligations detailed above. (Compl. ¶ 19). Plaintiffs allege that the payments due to each of them are calculated separately on monthly remittance reports that are required to be prepared by each contributing employer. (Compl. ¶ 20). A complete report and payment must be submitted by the twentieth day of each month following the month in which the work was performed, and a payment is deemed delinquent if the payment and report are not received within that time period. (Compl. ¶ 21).

Under the Labor Contract, Trust Agreements, NPF Rules and Regulations, SASMI Rules and Regulations, and other benefit plans, Burke is required to pay the plaintiffs interest on any delinquent contributions at a rate of eight and one-half percent (8.5%) per annum; late charges of $50.00 for each month of contributions paid after the due date and before any lawsuit is filed or ten percent (10%) of the contributions due for those months; liquidated damages of twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed; and all attorney's fees and costs incurred by the plaintiffs as a result of Burke's failure to comply with its obligations. (Compl. ¶¶ 22, 23).

In Count I of the complaint, for Burke's violation of 29 U.S.C. § 1145, the SASMI, the NPF, the ITI, and the SMWIASF ("the ERISA Funds") seek a judgment in the amount of

$21,698.38 in unpaid contributions during the period from May 2014 through July 2015, plus any additional amounts that become due and owing during the pendency of this litigation together with interest from the due date until the date of payment, liquidated damages, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 28, 29; Ex. 2). In Count II of the complaint, for Burke's breach of contract, all plaintiffs seek a judgment in the amount of $21,771.08 in unpaid contributions during the period from May 2014 through July 2015, plus any additional amounts that become due and owing during the pendency of this litigation, along with late charges, liquidated damages, interest, audit fees, and attorney's fees and costs. (Compl. ¶¶ 32, 33; Ex. 2).

In the memorandum in support of plaintiffs' motion for default judgment, the ERISA Funds state that they are owed the amounts as detailed below under Count I for violations of 29 U.S.C. § 1145. (Docket no. 9; Ex. 5B)

| Plaintiff | Contributions | Interest through 1/5/2016 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| SASMI | $3,166.64 | $174.43 | $633.32 | $0 | $3,974.39 |
| NPF | $18,342.72 | $1,038.55 | $3,668.54 | $4,983.01 | $28,032.82 |
| ITI | $174.48 | $10.07 | $34.90 | $0 | $219.45 |
| SMWIASF | $14.54 | $0.84 | $2.91 | $0 | $18.29 |
| Total | $21,698.38 | $1,223.89 | $4,339.67 | $4,983.01 | $32,244.95 |

In the motion for default judgment, the plaintiffs (including NEMIC and SMOHIT) state that they are owed the amounts as detailed below under Count II for breach of contract. (Docket no. 9; Ex. 5A). As described in the memorandum in support of the motion for default judgment, 29 U.S.C. § 185 provides for an additional recovery of pre-litigation liquidated

6

damages. Therefore, in addition to the amounts sought in Count I by SASMI, NPF, ITI, and SMWIASF, they are seeking an award of pre-litigation liquidated damages for contributions that were paid after the due date in Count II.[1] In both the complaint and the motion for default judgment the NPF is also seeking an award in Count II for $1,600.00 for the audit that was performed on June 1, 2015 for the period January 2014 through May 2015.

| *Plaintiff* | *Contributions* | *Interest through 1/5/2016* | *Liquidated Damages* | *Pre-litigation Liquidated Damages* | *Costs and Attorney's Fees* | *Total* |
|---|---|---|---|---|---|---|
| SASMI | $3,166.64 | $174.43 | $633.32 | $27.68 | $0 | $4,002.07 |
| NPF | $18,342.72 | $1,038.55 | $3,668.54 | $192.96 | $4,983.01 | $28,225.78 |
| ITI | $174.48 | $10.07 | $34.90 | $1.92 | $0.00 | $221.37 |
| SMWIASF | $14.54 | $0.84 | $2.91 | $0.16 | $0 | $18.45 |
| SMOHIT | $29.08 | $1.68 | $5.82 | $0.32 | $0.00 | $36.90 |
| NEMIC | $43.62 | $2.52 | $8.72 | $0.48 | $0.00 | $55.34 |
| **Total** | $21,771.08 | $1,228.09 | $4,354.21 | $223.52 | $4,983.01 | $32,559.91 |

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe*

---

[1] There is a difference in the amounts sought in the motion for default judgment (Docket no. 9, Exs. 5A and 5B) and the complaint (Docket no. 1, Ex. 2) because in the complaint the interest is calculated only up to the filing date and the motion for default judgment contains an itemization of the attorney's fees and costs sought.

7

*Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. (Compl. ¶ 1). Section 502 provides that the district courts of the United States have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) because it is brought under ERISA for an alleged failure to make contributions in accordance with a collective bargaining agreement or multiemployer plan. The plaintiffs further allege that this court has subject matter jurisdiction under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Compl. ¶ 1). That section provides that United States district courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. This case is also properly before the court pursuant to 29 U.S.C. § 185(a) because it is brought under the LMRA for violation of a contract between an employer and a labor organization.

Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plaintiffs state that the respective funds are administered in Fairfax, Virginia. (Compl. ¶ 9). On October 13, 2015, the summons and

complaint were served on the president of Burke. (Docket no. 4). Venue is proper in this court and this court has personal jurisdiction over the defendant since the respective funds are administered within the Alexandria Division of the Eastern District of Virginia. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040 (E.D. Va. 1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the Due Process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendant, and that venue is proper in this court.

### Grounds for Entry of Default

The summons and complaint were served on the defendant on October 13, 2015. (Docket no. 4). Under Federal Rule of Civil Procedure 12(a), a responsive pleading was due on November 3, 2015, which is 21 days after service of process on the defendant. After the defendant failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on December 18, 2015. (Docket no. 6). The Clerk of Court entered a default on December 23, 2015. (Docket no. 7).

The undersigned magistrate judge recommends a finding that the defendant was served properly, that it failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to the defendant.

### Liability and Measure of Damages

Rule 54(c) of the Federal Rules of Civil Procedure provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Because the defendant did not file a responsive pleading and is in default, it admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

### Count I

As set forth in the complaint, Burke failed to submit remittance reports and contributions to the ERISA Funds for the period from May 2014 through July 2015. (Compl. ¶ 27). Specifically, 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of --
>
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of their claim for damages, plaintiffs submitted a declaration from Walter Shaw. (Docket no. 9, Ex. 1) ("Shaw Decl."). Mr. Shaw is the Manager of the Billing Department for the NPF and he is familiar with the payment histories of employers obligated to make contributions to each of the plaintiffs. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw and the Delinquency Calculation Summary attached as Exhibit 5B to

the memorandum in support of the motion for default judgment establish that Burke owes the ERISA Funds the following amounts:

| Plaintiff | Contributions | Interest through 1/5/2016 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| SASMI | $3,166.64 | $174.43 | $633.32 | $0 | $3,974.39 |
| NPF | $18,342.72 | $1,038.55 | $3,668.54 | $4,983.01 | $28,032.82 |
| ITI | $174.48 | $10.07 | $34.90 | $0 | $219.45 |
| SMWIASF | $14.54 | $0.84 | $2.91 | $0 | $18.29 |
| Total | $21,698.38 | $1,223.89 | $4,339.67 | $4,983.01 | $32,244.95 |

Each of the ERISA Funds are owed unpaid contributions for the period May 2014 through July 2015; interest calculated at the rate established under 28 U.S.C. § 1961 on ERISA statutory liability from the date the payment was due through January 5, 2016; and liquidated damages on the contributions unpaid as of the commencement of the litigation calculated at a rate of 20% pursuant to 29 U.S.C. §§ 1145 and 1132(g)(2)(c). (Docket no. 9, Ex. 5B).

The NPF submitted a declaration from Matthew T. Tokarsky detailing the attorney's fees and costs incurred in this action. (Docket no. 9, Ex. 6) ("Tokarsky Decl."). The total amount of the attorney's fees and costs incurred was $4,983.01. (Tokarsky Decl. ¶ 2). The $4,378.50 in attorney's fees is comprised of 24.1 hours of attorney and paralegal time. (Tokarsky Decl. Ex. 7). The amount of costs was $604.51, which is comprised of $400.00 for filing fee, $134.75 for service fees, $34.11 for postage and delivery charges, and $35.65 for photocopy fees. (Id.). The hourly rates charged for the attorney time was $220.00 and $195.00 and the hourly rate for the paralegal was $80.00. (Tokarsky Decl. ¶ 3). The undersigned magistrate judge has reviewed the declaration of Mr. Tokarsky and recommends a finding that

the hourly rates charged and the costs incurred by the NPF are reasonable.[2] After reviewing the individual time entries, the court finds that the total amount of time incurred in pursuing this action and the amounts billed were reasonable.

For these reasons, the undersigned recommends that a default judgment be entered in favor of the SASMI, the NPF, the ITI, and the SMWIASF against Burke on Count I of the complaint for violation of 29 U.S.C. § 1145 in total amount of $32,244.95 as detailed above.

## Count II

In Count II, all plaintiffs allege that Burke has not paid them as required by the Labor Contract. (Compl. ¶ 31). Plaintiffs claim that Burke owes plaintiffs contributions, interest, liquidated damages, and late charges under the Labor Contract. (Compl. ¶ 32). Specifically, 29 U.S.C. § 185(a) provides that

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In the motion for default judgment the SMOHIT and the NEMIC seek recovery under this statute for unpaid contributions, interest, liquated damages, and pre-litigation liquidated damages. (Docket no. 9). The remaining plaintiffs seek the same amounts sought in Count I plus an award for pre-litigation liquidated damages. (Docket no. 9, Ex. 5A).

---

[2] The Tokarsky declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable hourly rate. While it includes exhibits indicating regional associate hourly billing rates and a survey of Ohio hourly billing rates from 2010, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278. However, since the defendant has not contested the hourly rates in this case, the court will accept the allegations set forth by the NPF concerning the reasonableness of those rates. The hourly rates and costs requested are consistent with the rates and costs incurred in similar cases and awarded by this court. A review of the time entries reveals the total time billed was appropriate under the circumstances of this case.

As an initial matter, these plaintiffs have standing to seek relief for breach of contract under the LMRA as third-party beneficiaries of the collective bargaining agreement. *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, 2008 WL 4329294 at *5 (E.D. Va. Sept. 15, 2008) (citing *Bakery and Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021–22 (4th Cir. 1997)). In support of their claim for damages under the Labor Contract, the NEMIC and the SMOHIT rely upon the declaration of Walter Shaw and a Delinquency Calculation Summary, similar to that discussed in Count I, above. (Docket no. 9, Ex. 5A).

Under the breach of Labor Contract claim, Burke owes the defendants the following amounts:

| Plaintiff | Contributions | Interest through 1/5/2016 | Liquidated Damages | Pre-litigation Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|---|
| SASMI | $3,166.64 | $174.43 | $633.32 | $27.68 | $0 | $4,002.07 |
| NPF | $18,342.72 | $1,038.55 | $3,668.54 | $192.96 | $4,983.01 | $28,225.78 |
| ITI | $174.48 | $10.07 | $34.90 | $1.92 | $0.00 | $221.37 |
| SMWIASF | $14.54 | $0.84 | $2.91 | $0.16 | $0 | $18.45 |
| SMOHIT | $29.08 | $1.68 | $5.82 | $0.32 | $0.00 | $36.90 |
| NEMIC | $43.62 | $2.52 | $8.72 | $0.48 | $0.00 | $55.34 |
| Total | $21,771.08 | $1,228.09 | $4,354.21 | $223.52 | $4,983.01 | $32,559.91 |

These amounts include unpaid contributions for the months of May 2014 through July 2015; interest at a rate of 8.5% per annum from the date the payment was due through January 5, 2016 pursuant to the Labor Contract; liquidated damages on the contributions unpaid at the commencement of litigation calculated at a rate of 20%; and pre-litigation liquidated damages

for contributions paid after the due date and prior to the filing of the lawsuit. (Docket no. 9, Ex. 5A). As in Count I, the NPF claims $4,983.01 in attorney's fees and costs under this count and they rely upon the declaration of Matthew T. Tokarsky in support of its claim for, and the reasonableness of, the attorney's fees and costs in this court. (Docket no. 9, Ex. 6). As discussed above, the undersigned magistrate judge has reviewed the declaration of Mr. Tokarsky along with the time entry and cost information submitted and recommends that an award of $4,983.01 is appropriate in this case. In addition to these amounts, the NPF is also entitled to an award of $1,600 for the audit fees and costs for the audit conducted on June 26, 2015 pursuant to Article XV, Section 5 of the Labor Contract; Article V, Section 3 of the Pension Fund Document; Section III (D) of the National Funds' Collection Procedures; and, Article III of the SASMI Rules. (Shaw Decl. ¶ 9).

For these reasons, the undersigned recommends that a default judgment be entered in favor of the plaintiffs against Burke on Count II of the complaint for breach of contract in the total amount of $34,159.91 as detailed above.

The amounts that the NPF, the SASMI, the ITI, and the SMWIASF seek in Count II include the amounts they seek in Count I. Those plaintiffs are only entitled to one recovery for the amounts sought. For that reason, the undersigned recommends a total judgment be entered against Burke in the amount of **$34,159.91**.

## Conclusion

For the reasons stated above, the undersigned recommends that a judgment be entered in favor of the plaintiffs the Board of Trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, the Board of Trustees of the Sheet Metal Workers' National Pension Fund, the Board of Trustees of the International Training Institute for the Sheet Metal

and Air Conditioning Industry, the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund, the Sheet Metal Occupational Health Institute Trust, and the National Energy Management Institute Committee in the total amount of **$34,159.91**, which includes unpaid contributions of $21,771.08, interest of $1,228.09, liquated damages of $4,354.21, pre-litigation liquated damages of $223.52, audit fees and costs of $1,600.00, and legal fees and costs of $4,983.01.

### Notice

By means of the court's electronic filing system and by mailing a copy of the proposed findings of fact and recommendations to Burke Metals LLC, 1804 Appleton Way, Whippany, New Jersey 07981, the parties are notified that objections to the proposed findings of fact and recommendations must be filed within fourteen (14) days of service of the proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on the proposed findings of fact and recommendations.

ENTERED this 15th day of January, 2016.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia